STATE OF WEST VIRGINIA

*v.*

RICHARD GALE BRADLEY

(No. 13843)

Decided May 29, 1979.

*John S. Sibray, J. Stephen Max, James M. Sturgeon, Jr.,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Pamela Dawn Tarr,* Assistant Attorney General, for defendant in error.

HARSHBARGER, JUSTICE:

A Kanawha County Circuit Court jury convicted Richard Gale Bradley of murdering a fellow inmate in the county jail. The only problem with the trial we need probe is the propriety of introduction of testimony by policemen about oral statements made by Bradley that incriminated him in beating and incinerating the inmate.

The killing occurred on the morning of March 29, 1975. That evening, the county sheriff and two of his deputies approached defendant and read an "Interrogation: Advice of Rights" form:

> "Before we ask you any questions, you must understand your rights.
>
> "You have the right to remain silent.
>
> "Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer."

One of the deputies asked him if he understood what had been read to him and he said he did. The deputy then asked him to sign a waiver:

"I have read this statement of my rights and I understand what my rights are. I (am) (am not) willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

Bradley refused to sign. He requested that he be allowed to speak to William Hazlett, an attorney representing him on another charge. Unsuccessful efforts were made to reach Hazlett and another person defendant wanted to contact, and the sheriffs questioned him no further.

Two days later in the morning, and without any further effort to obtain counsel for Bradley, the two deputies and a Charleston city police detective again read defendant his "rights" and the waiver. He affirmed his understanding, refused to sign the waiver, and asked for a lawyer. No further questioning was conducted. But neither was there effort to get the man a lawyer.

That afternoon two of the officers arrested him, read the warnings which again defendant acknowledged understanding, and thereupon transported him to the office of a justice of the peace where a warrant issued

charging him with murder. The justice of the peace also advised him of his right to counsel. The record is silent about his response to this advice.

Later, after returning to the jail, when faced with what the police officers characterized as a group of hostile media employees, he volunteered statements to the police who had him in custody. He prefaced the admissions with vouchments such as, "Oh, I know about your rights. You have explained to me about them. I know what they are."

He refused to give a written statement, but the next day again spoke with officers, corroborating what he had told them before.

These oral admissions were not suppressed by the trial court and were used in defendant's trial.

The main argument advanced by the state supporting admission of the remarks made by defendant, is that he waived his Fifth Amendment rights and his right to counsel.

'When a defendant warned of his rights makes statements without a lawyer present, the prosecution may use these statements at trial only if it sustains its "heavy burden" of demonstrating that the defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). ... To be valid, a waiver must be made voluntarily, *United States v. Ogle*, 5 Cir., 1969, 418 F.2d 238, and may not be presumed "simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). *An express statement that the individual does not want a lawyer is not required, however, to show that the individual waived his right to have one present. See Bond v. United States, 10 Cir., 1968, 397 F.2d 162, 165. All that the prosecution must show is that the defendant was*

*effectively advised of his rights and that he then intelligently and understandingly declined to exercise them. See Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).'* [Emphasis supplied] [*United States v. Montos*, 421 F.2d 215, 224 (5th Cir. 1970), *cert. den.,* 397 U.S. 1022 (1970)]

*Quoted in: United States v. Mix*, 446 F.2d 615 (5th Cir. 1971), and *United States v. Daniel*, 441 F.2d 374 (5th Cir. 1971).

This argument fails because it overlooks this defendant's specific requests for counsel at least twice made. And it also overlooks his refusal to sign the waivers proffered to him at least twice.

We would certainly contribute nothing to a logical body of law were we to hold that a man who asks for a lawyer and expressly refuses to sign a waiver of his right to a lawyer, thereby waives that right. "I want a lawyer" does not mean "I do not want a lawyer." "I will not waive my right to a lawyer" does not mean "I waive my right to a lawyer." "No" does not mean "yes."

And our law is clear that once the request for counsel is made, all interrogation—that day or later—stops, until counsel is provided. We cannot allow a request for counsel to be avoided by minimal unsuccessful efforts to get a particular lawyer; or by the government simply doing nothing. *See, Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *State v. McNeal*, W. Va., 251 S.E.2d 484 (1978). *Accord,: Petree v. State*, 248 Ark. 359, 451 S.W.2d 461 (1970); *People v. Randall*, 1 Cal. 3d 948, 83 Cal. Rptr. 658, 464 P.2d 114 (1970); *Wakeman v. State*, Fla. App., 237 So.2d 61 (1970); *Mims v. State*, 255 Ind. 37, 262 N.E.2d 638 (1970). *See also: Michigan v. Mosely*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

When a criminal defendant requests counsel, it is the duty of those in whose custody he is, or if he is not in custody and is indigent, the duty of those to whom the request is made, to secure counsel for the accused within a reasonable time. In the interim, no interrogation

shall be conducted, under any guise or by any artifice.

If after requesting counsel an accused shall recant his request before a lawyer can reasonably be secured, the heavy burden of the government to prove waiver (*Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed. 2d 424 (1977), also, *Commonwealth v. Nathan*, 445 Pa. 470, 285 A.2d 175 (1971)) is even heavier. It can best be borne by a written statement, signed by the defendant, affirming his relinquishment of his theretofore asserted constitutional rights. Only then can interrogation proceed, absent counsel.

Considering that the United States Supreme Court, in *North Carolina v. Butler*, No. 78-354, 25 Crim. L. Rep. 3035, 47 U.S.L.W. 4454 (U.S.S.Ct. April 24, 1979)* found no significance in at least one of the facts we have here—the refusal of defendant to sign a "waiver of rights" form—it may be well that we emphasize that our own state constitutional guarantees, W. VA. CONST. Art. 3, § 5 (protection against self-incrimination) and Art. 3, § 14 (assistance of counsel guarantee) demand the conclusions we reach; and that our reference to the federal cases, of which *Miranda* is surely the most soundly reasoned and perceptive, is to reflect the guidance they give, and is not to incorporate the federal constitution's protections as bases for our rule.

*Reversed.*

---

*\*North Carolina v. Butler*, No. 78-354, 25 Crim. L. Rep. 3035, 47 U.S.L.W. 4454 (U.S.S.Ct. April 24, 1979), reversed a North Carolina Supreme Court rule that only express waivers can ever suffice. Jutices Brennan, Marshall and Stevens dissented and would have imposed an express waiver requirement.