301 S.E.2d 596

**STATE of West Virginia**

v.

**Victoria LOUK.**

**No. 15565.**

Supreme Court of Appeals of West Virginia.

March 25, 1983.

Frederick S. Wilkerson, Asst. Atty. Gen., Charleston, for appellee.

Joseph A. Wallace, Wallace, Ross & Gibson, Elkins, for appellant.

HARSHBARGER, Justice:

The Randolph County Circuit Court tried Victoria Louk for first degree murder for killing her son-in-law, David Petrice, and for feloniously assaulting his companion, Randall Riffle. She presented self-defense evidence and was found guilty of voluntary manslaughter of Petrice and not guilty of assaulting Riffle.

Three months before the incident, Petrice and his wife Linda were separated, and Linda took the couple's two young sons and moved to her mother's farm home. Then, on August 13, 1980, Petrice and Riffle were drinking in Riffle's car and Petrice asked Riffle to drive him to his inlaws' farm to see his children.

Ms. Louk and a neighbor were working in the Louk garden, and in an adjacent garden was Elza Lambert, the man with whom Ms. Louk had lived for nineteen years. Elza called for her and she went to see what he wanted, and found Elza arguing with Petrice and Riffle (whom she did not know). Petrice was throwing rocks at Elza and they were yelling at each other. All three gardeners asked the men to leave, but they did not, and the altercation continued. Elza sent Ms. Louk to the house to get a gun. She locked her children and grandchildren in the house, and returned with a loaded pistol. Louk testified that she was terrified that the young men had a gun and were coming to attack her and her family. She shot five times, wounding Riffle and killing Petrice.

Police arrived immediately. Louk told them she had shot at the men with a rifle that she then handed to the officers.[1] She was read her *Miranda* rights on the scene at approximately 4:00 P.M., and although she talked with the policemen, she insisted that she wanted to ask Elza to get her a lawyer; and she refused to make a statement or sign anything.

She was taken to police headquarters at 6:55 that evening, and signed a *Miranda* warning form that indicated she did not want to speak with anyone at that time. At the magistrate's hearing, about 8:00 or 9:00 o'clock that night, she said that she did not want an appointed lawyer because she was getting her own. She spent the night in jail, and in the morning was permitted to call Elza.

While she was waiting she was taken to the circuit court for her bond hearing. There Ms. Louk informed the court that Elza was getting a lawyer for her.

After her return from court, but before her counsel arrived, she signed a waiver of rights and gave the police a statement. At the *in camera* suppression hearing Louk testified that she "got tired of them [the police] asking me. Every time they'd walk by they'd ask are you going to give me a

---

1. The bullets from Petrice's body were tested at our state Criminal Investigation Bureau laboratory, and turned out to be from a handgun. Police returned to the Lambert/Louk farm and Elza gave them the actual weapon Victoria used.

She later explained she was afraid to admit that she used a pistol, because it was not registered and she thought her troubles would be magnified.

statement, yet and I'd tell them no, so I gave them one." (Record, p. 266.)

The United States Supreme Court spoke on this very question in an Arizona case in which a defendant, after requesting counsel and refusing to confess during the night following his arrest, was interrogated the next morning and gave a statement before he talked with his lawyer:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–5, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 386 (1981), *rehearing denied,* 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (footnote omitted).

[1] Our law on this matter is absolutely unmistakable. Syllabus Point 4, *State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982); *State v. Sowards,* 167 W.Va. 896, 280 S.E.2d 721 (1981); *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980); Syllabus Points 1 and 2, *State v. Bradley,* 163 W.Va. 148, 255 S.E.2d 356 (1979). In *State v. McNeal,* 162 W.Va. 550, 251 S.E.2d 484 (1978), we wrote:

> Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited

purpose of seeking to persuade him to reconsider his decision on the presence of counsel. *Id.,* Syllabus Point 1.

■ Louk indicated at least three times that she did not want to speak and would get her own counsel. The interrogation, and solicitations of statements from her, should have stopped.

■ We cannot distinguish Louk's case from *Edwards.* Police were specifically asked if Louk initiated the written statement by contacting them. None testified that she suggested or requested that they take her statement. She was entitled to a total abstention from questioning until she could talk with her lawyer. Her later waiver of counsel was ineffectual. Our state constitution requires no less than a total cessation of police-defendant contact after an attorney has been requested. Officers must not talk to people about their cases after they indicate that they want a lawyer.

Defendant claims that there were numerous other trial errors.

■ She believes that the jury verdicts on both indictments were inconsistent. If she were not guilty of assault or malicious wounding of Riffle because it was self-defense, she necessarily had the same justification for shooting Petrice. Both were shot during one fusillade. There was sufficient evidence for the jury to decide that Ms. Louk entertained different intentions toward Riffle than she had toward Petrice. *See State v. Schaefer,* 170 W.Va. 649, 295 S.E.2d 814 (1982).

■ The trial court refused to admit various testimony about Petrice's army records, and both victims' criminal convictions and quarrelsome, violent natures. We wrote in Syllabus Point 3, *State v. Gwinn,* 169 W.Va. 456, 288 S.E.2d 533 (1982):[2]

> "In a prosecution for murder, where self-defense [or provocation] is relied

---

**2.** *See also State v. W.J.B.,* 166 W.Va. 602, 276 S.E.2d 550, 556 (1981):

"The reasonableness of the defendant's belief and conduct may depend on the past actions of the deceased, and for this reason the victim's history of threats, brandishing of arms, and violence toward the defendant and his family and his general reputation for violence are ad-

missible evidence on the issue of self-defense. *See State v. Bowyer,* 143 W.Va. 302, 101 S.E.2d 243 (1957); *State v. Peoples,* 106 W.Va. 262, 145 S.E. 389 (1928); *State v. Porter,* 98 W.Va. 390, 127 S.E. 386 (1925); Annot., *Admissibility of Evidence as to Other's Character or Reputation for Turbulence on Question of Self-Defense by*

upon to excuse the homicide, and there is evidence showing, or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant, it is competent for the defense to prove the character or reputation of the deceased as a dangerous and quarrelsome man, and also to prove prior attacks made by the deceased upon him, as well as threats made to other parties against him; and, if the defendant has knowledge of specific acts of violence by the deceased against other parties, he should be allowed to give evidence thereof." Syllabus Point 1, *State v. Hardin,* 91 W.Va. 149, 112 S.E. 401 (1922). (*Provocation* ours.)

▄ Of course, a defendant must know about the specific violent or unlawful acts of a decedent, and so evidence about events that happened after the alleged crime, which could not have contributed to defendant's fearful state of mind at the time she defended herself, was properly excluded.

▄ Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion. Syllabus Point 2, *State v. Rector,* 167 W.Va. 748, 280 S.E.2d 597 (1981); Syllabus Point 5, *Casto v. Martin,* 159 W.Va. 761, 230 S.E.2d 722 (1976). We do not find abuse in this record.[3]

▄ Defendant presents questions about several instructions. She argues the court erred by giving State's Instructions 1, 2, 5 and 24 because they informed the jury that murder and malicious wounding were possible verdicts. She cites *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374, 377 (1978): "[w]here provocation is shown to exist as a matter of law, a murder instruction or conviction is not warranted." Her evidence was that she was provoked into shooting Petrice and Riffle, and she concludes, therefore, that any murder instructions were wrong. She misread *Kirtley. Kirtley* requires that provocation to be shown to exist *as a matter of law.* In Footnote 1,

*One Charged with Assault or Homicide,* 1 A.L. R.3d 571 (1965)."

*Kirtley* recognized that there will usually be "considerable factual conflict" about whether provocation existed. When the facts are disputed about whether there was a legally recognized reason for an assaultive reaction, a jury must resolve that question and a court *may* instruct on a possible murder verdict.

State's Instruction 16 permitted malice to be inferred:

"The Court instructs the jury that to convict one of murder, it is not necessary that malice should exist in the heart of the Defendant against the deceased. If the jury believe from the evidence that the Defendant was guilty of shooting with a deadly weapon, the deceased, and of killing him, the intent, the malice and the wilfullness, deliberation and premeditation may be inferred from the act, and such malice may not be directed against any particular person, but such as shown a heart regardless of social duty and fatally bent on mischief."

▄ It is unconstitutional to shift the burden of proof to a defendant on any element of a crime by instructing a jury to *presume* its existence from certain facts. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Presumptions differ from inferences. *State v. Greenlief,* 168 W.Va. 561, 285 S.E.2d 391, 395 (1981). Instructions about the "inference" of malice, if supported by the evidence, are permissible. Syllabus Point 3, *State v. Greenlief, supra;* Syllabus Point 6, *State v. Ferguson,* 165 W.Va. 529, 270 S.E.2d 166 (1980).

▄ Defendant also protests the trial court's failure to give Defense Instructions 8, 18 and 22. We find these instructions were repetitious of other instructions that were given, and need not have been given. *State v. Helmick,* 169 W.Va. 94, 286 S.E.2d 245 (1982); *State v. Scotchel,* 168 W.Va. 545, 285 S.E.2d 384 (1982); *State v. Key,* 166 W.Va. 505, 275 S.E.2d 924, 927 (1981).

Defendant moved for production of grand jury minutes and transcript, and was denied. This trial predated by several

---

**3.** The trial court's decision not to admit psychiatrist Dr. Ferguson's testimony about Louk's capacity to form malicious intent will not be reversed for the same reason.

months adoption of our Rules of Criminal Procedure, but those rules reflect what our law has been. W.Va.Rules of Criminal Procedure, Rule 6(e)(3)(C)(ii):

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made:

. . . . .

(ii) When permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

■ Defendant's pre-trial motion and arguments presented no grounds for requesting disclosure.[4] At a minimum, most courts require a showing of "particularized need" for pre-trial disclosure.[5]

Disclosure of grand jury testimony during trial for purposes of impeachment or cross-examination is not involved here. *See generally,* Annot., Accused's Right to Inspection of Minutes of State Grand Jury, 20 A.L.R.3d 7 (1968 and Supp.); Annot., Accused's Right to Inspection of Minutes of Federal Grand Jury, 3 A.L.R.Fed. 29 (1970 and Supp.). The trial court clearly did not abuse his discretion when he denied defendant's disclosure motion.

Reversed and remanded.

---

**4.** A defendant is entitled to his own recorded grand jury testimony without any showing. Fed.R.Crim.P. 16(a)(1)(A); W.Va.R.Crim.P. 16(a)(1)(A).

**5.** *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), *reh. denied,* 361 U.S. 855, 80 S.Ct. 42, 4 L.Ed.2d 94; *United States v. Williams,* 644 F.2d 950 (2d Cir.1981); *Index Fund, Inc. v. Hagopian,* 512 F.Supp. 1122 (S.D.N.Y.1981); *United States v. Addonizio,* 313 F.Supp. 486, 500, *aff'd.,* 451 F.2d 49 (3d Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), *reh. denied,* 405 U.S. 1048, 92 S.Ct. 1309, 31 L.Ed.2d 591; *United States v. Glassman,* 562 F.2d 954 (5th Cir.1977); *United States v. Marks,* 364 F.Supp. 1022, 1030–31 (E.D.Ky.1973), *aff'd.,* 520 F.2d 913 (6th Cir. 1975), *rev'd on other grounds,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *United States v. Edelson,* 581 F.2d 1290 (7th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456; *United States v. Bruton,* 647 F.2d 818, 823–24 (8th Cir.1981), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170; *United States v. Hamilton,* 452 F.2d 472, 479–80 (8th Cir.1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126; *Gollaher v. United States,* 419 F.2d 520, 527 (9th Cir.1969), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424; *United States v. Gant,* 487 F.2d 30 (10th Cir.1973), *cert. denied,* 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 293; *United States v. Lewis,* 514 F.Supp. 169 (D.C.Pa.1981); *United States v. Kosovsky,* 506 F.Supp. 46 (D.C.Okl. 1980); *Bowens v. State,* 54 Ala.App. 491, 309 So.2d 844, 847, *cert. denied,* 293 Ala. 746, 309 So.2d 850 (1975); *State ex rel. Ronan v. Super. Ct. of Maricopa County,* 95 Ariz. 319, 390 P.2d 109, 118 (1964); *People v. District Court for Second Judicial District,* 199 Col. 398, 610 P.2d 490 (1980); *United States v. Alexander,* 428 A.2d 42, *reh. denied,* 441 A.2d 936 (D.C.App.1981); *State v. McFarlane,* 318 So.2d 449 (Fla.Dist.Ct. App.1975); *People v. Tate,* 25 Ill.App.3d 411, 323 N.E.2d 485, 493 (1974), *aff'd.,* 63 Ill.2d 105, 345 N.E.2d 480; *Dinning v. State,* 256 Ind. 399, 269 N.E.2d 371 (1971); *State v. Martin,* La., 376 So.2d 300 (1979), *cert. denied,* 449 U.S. 998, 101 S.Ct. 540, 66 L.Ed.2d 297, *reh. denied,* 449 U.S. 1119, 101 S.Ct. 931, 66 L.Ed.2d 847; *State v. Curry,* 262 La. 616, 264 So.2d 583, 585 (1972); *State v. Cugliata,* Me., 372 A.2d 1019 (1977), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128; *Sutton v. State,* 25 Md.App. 309, 334 A.2d 126, 129 (1975); *Commonwealth v. Carita,* 356 Mass. 132, 249 N.E.2d 5 (1969); (*But see, Commonwealth v. Edgerly,* 372 Mass. 337, 361 N.E.2d 1289 (1977)); *State v. Guelker,* Mo., 548 S.W.2d 521 (1976), *cert. denied,* 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260, *reh. denied,* 434 U.S. 882, 98 S.Ct. 248, 54 L.Ed.2d 167, *State v. Felter,* 85 N.M. 619, 515 P.2d 138 (1973); *People v. Buckman,* 70 Misc.2d 220, 333 N.Y.S.2d 452 (1972); *State v. Gall,* 65 Ohio App.2d 57, 19 Ohio Ops.3d 39, 415 N.E.2d 1008, 1013, *motion overruled,* (1980); *State v. Roberts,* 50 Ohio App.2d 237, 4 Ohio Ops.3d 211, 362 N.E.2d 1003 (1976); *State ex rel. Drew v. Steinbock,* 286 Or. 461, 595 P.2d 1234 (1979); *State v. Benoit,* 117 R.I. 69, 363 A.2d 207 (1976); *State v. Crescenzo,* 114 R.I. 242, 948, 332 A.2d 421, 428 (1975); *State v. Kaseman,* S.D., 273 N.W.2d 716, 725–26 (1978); *State v. Bad Heart Bull,* S.D., 257 N.W.2d 715, 722–23 (1977), *app. dismissed,* 434 U.S. 1004, 98 S.Ct. 708, 54 L.Ed.2d 747; *West v. State,* 3 Tenn. Cr.App., 671, 466 S.W.2d 524 (1971), *cert. denied; McManus v. State,* Tex.Cr.App., 591 S.W.2d 505 (1979); *Lester v. State,* 498 S.W.2d 927, 929–30 (Tex.Cr.App.1973).