310 S.E.2d 488

**STATE of West Virginia**

v.

**Edward L. GREEN.**

**No. 15755.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

Fitzsimmons & Parsons, Robert P. Fitzsimmons and William E. Parsons II, Wheeling, for appellant.

Chauncey H. Browning, Jr., Atty. Gen. and Michael E. Froble, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

The appellant, Edward L. Green, appeals from a conviction of sexual abuse in the first degree rendered against him by a jury in the Circuit Court of Hancock County. He was sentenced to an indeterminate term of from one to five years in the state penitentiary. Although the appellant raises several assignments of error, we find one to be dispositive, and reverse solely on that point.

The incident which gave rise to the criminal charges against the appellant allegedly took place on the evening of February 15, 1980, in the vicinity of Oglebay Park, Wheeling, West Virginia. At 9:30 a.m. the following morning, Sgt. James Wright of the Wheeling Police Department sought out the appellant at his place of employment after learning that the appellant's truck fit the description of the vehicle driven by the complainant's assailant. Sgt. Wright told the appellant in general terms the offense alleged to have been committed; informed the appellant of his constitutional rights; and instructed the appellant to accompany him to the police station for further questioning. There was no warrant for the appellant's arrest at this time, and he was not informed whether he was, in fact, under arrest.

The appellant, accompanied by Sgt. Wright, arrived at the police station shortly before 10:00 a.m. The appellant and Sgt. Wright were joined by Lt. Joseph Davis, also of the Wheeling Police Department, at about 10:00 a.m. The three men discussed the case in general terms for approximately twenty minutes, although Sgt. Wright left the room at some point to photograph the appellant's truck. At approximately 10:20 a.m., the appellant was asked by Lt. Davis to read and sign a waiver of rights form before his statement was taken. After the appellant finished reading the waiver of rights form, he testified at a pre-trial suppression hearing that, "I told Mr. Davis I thought I should get ahold of an attorney." At this point, the appellant testified that Lt. Davis replied, "[L]et's get this paperwork out of the way because I don't know what I'm going to charge you with. Let's get all this out of the way." The appellant then proceeded to sign the waiver of rights form, and give an oral statement in which he admitted having been with the alleged victim on the evening in question, but denied any sexual contact.

Between this initial statement and a second statement given at approximately 12:00 p.m., Lt. David testified at the suppression hearing that the appellant attempted to contact his attorney by telephone "numerous times." Lt. Davis also testified that the appellant went so far as to telephone his attorney's mother in order to reach his attorney. Yet, the police officer did not

discontinue his interrogation of the appellant.

Shortly before the appellant's second statement, the appellant testified that Lt. Davis informed him that the hospital laboratory reported that spermatozoa had been found in the complainant's vagina and that the appellant was "in a world of trouble." Sgt. Wright and Lt. Davis then asked the appellant if he would "like to reconsider" the content of his initial statement, and again had the appellant execute a waiver of rights form. In this statement, the appellant admitted to having consensual sexual intercourse with the complainant.

Despite testimony by Lt. Davis that he was aware of the appellant's desire and numerous attempts to contact counsel, the trial court overruled the appellant's motion to suppress the two statements. At the conclusion of the pre-trial suppression hearing, the trial court stated,

There is no doubt that this is a fairly close question. I feel that from the testimony that I can find without doubt that this defendant did state that he wanted to contact his attorney and that he did make attempts to reach the attorney. However, I didn't hear any testimony to the effect that he said that he wanted the questioning stopped and that he would refuse or he never refused to sign the waivers and he never refused to continue to answer questions.

■ Contrary to the trial court's apparent view that for a request for counsel to be effective in terminating further interrogation such request must be accompanied by a manifestation of the desire that interrogation cease, our prior decisions emphasize that termination of interrogation upon request of counsel is automatic, and does not require further elaboration on the part of the accused. In Syllabus Point 1 of *State v. McNeal*, 162 W.Va. 550, 251 S.E.2d 484 (1978), this Court stated the general rule concerning interrogation after a suspect has expressed a desire to be represented by counsel:

Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal

with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited purpose of seeking to persuade him to reconsider his decision on the presence of counsel.

*See also* Syl. pt. 1, *State v. Easter*, 172 W.Va. 338, 305 S.E.2d 294, 295 (1983); Syl. pt. 1, *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596 (1983); Syl. pt. 4, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982); Syl., *State v. Sowards*, 167 W.Va. 896, 280 S.E.2d 721 (1981); Syl. pt. 1, *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980).

■ Furthermore, police officers have an affirmative duty to secure counsel for an accused within a reasonable time after counsel has been requested. In Syllabus Point 1 of *State v. Bradley*, 163 W.Va. 148, 255 S.E.2d 356 (1979), we stated, "When a criminal defendant requests counsel, it is the duty of those in whose custody he is, to secure counsel within a reasonable time. In the interim, no interrogation shall be conducted, under any guise or by any artifice." *See also* Syl. pt. 2, *State v. Easter, supra.*

■ Although interrogation must cease once an accused states unequivocally that he wants an attorney, we have recognized that, "Where the defendant is equivocal in whether he desires to exercise his constitutional right to counsel, further questions may be asked in order to clarify his position." Syl. pt. 3, *State v. Clawson, supra.* The officer conducting the interrogation in the present case, however, did not attempt to ascertain what the appellant meant when he said he thought he should contact an attorney. Instead, the officer responded, "[L]et's get this paperwork out of the way ...." This diversionary tactic in order to direct the appellant's attention away from his desire to contact an attorney is exactly the type of "artifice" condemned in *Bradley.*

■ The appellant's statement concerning his desire to speak to his attorney was made at both a logical and a critical juncture in the interrogation process. He had just finished reading a form which con-

tained language referring to the waiver of certain constitutional rights, including the right to counsel. He was contemplating the effect of his signature on those constitutional rights, as well as on his subsequent questioning. At this crucial point, the appellant said, in effect, "I think I should contact my attorney." Despite contentions by the State to the contrary, we find nothing ambiguous in this request, particularly given the context within which it was made.

Lt. Davis neither ceased his questioning of the appellant nor attempted to clarify the appellant's wishes. Instead, he employed a diversionary tactic in an apparent effort to coax a hesitant suspect into making a inculpatory statement. Furthermore, despite the knowledge that the appellant had attempted to contact his attorney "numerous times" after the first statement was given, Lt. Davis proceeded to solicit a second statement from the appellant by informing him of the laboratory results and by telling him that he was "in a world of trouble." The denial of the appellant's right to counsel rendered his subsequent statements inadmissible.

For the foregoing reasons, the appellant's conviction is reversed and set aside and the case is remanded for a new trial.

Reversed and remanded.