374 S.E.2d 716

**STATE of West Virginia**

v.

**Harold D. GUNNOE.**

**No. 18475.**

Supreme Court of Appeals of West Virginia.

Nov. 4, 1988.

---

Phillip D. Gaujot, Cross Lanes, Mark A. Sorsaia, Hurricane, for Harold D. Gunnoe.

Charles G. Brown, III, Charleston, Atty. Gen., for the State.

NEELY, Justice:

Defendant, Harold Gunnoe, was arrested 14 September 1986, on a charge of uttering checks. While incarcerated, he was questioned over a period of several days about the murder of Veronica Blanton, but the defendant repeatedly denied any knowledge of Ms. Blanton's killing. On 19 September 1986, officers questioning defendant requested that he take a polygraph. The defendant replied that he wanted his attorney's advice before agreeing to take the polygraph. One of the officers contacted the lawyer appointed to represent defendant on the check uttering charge who responded that he represented defendant only on that charge and did not object to defendant's answering questions unless the questions related to the charge of uttering checks. The defendant was informed of his attorney's response, signed a written waiver of his *Miranda* rights, took the polygraph, and later that day confessed to the murder of Ms. Blanton.

The defendant moved to suppress the evidence of his confession. The trial court denied his motion after finding at a pretrial hearing that defendant had voluntarily waived his *Miranda* rights. The defendant renewed his motion during the trial and moved for a new trial at the conclusion of the case, but the trial court denied the motions.

At trial, the defendant denied any involvement with the killing, insisted his confession was given under duress, and that he repeatedly requested an attorney but his requests were denied. The defendant was convicted of first-degree murder without a recommendation of mercy and sentenced to life imprisonment. Defendant appeals assigning as error the trial court's failure to suppress his confession as involuntarily given in violation of his Fifth Amendment right to remain silent.[1]

---

1. Because we find merit to this assignment of error and award defendant a new trial, we do not address defendant's other assignments of error, namely: (1) the trial court's refusal to grant a mistrial because the jury heard a witness testify that defendant had taken a poly-

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the U.S. Supreme Court delineated the procedural safeguards necessary to secure a suspect's fifth amendment right against compulsory self-incrimination. The Court held that an accused has a right to have counsel present during a custodial interrogation and that before any interrogation, the suspect must be informed of this right and his right to remain silent.[2] 384 U.S. at 478–479, 86 S.Ct. at 1630–31. If the suspect asserts either of these rights, questioning must cease. The defendant may waive these rights, but any waiver must be voluntarily, knowingly, and intelligently made. The Court in *Miranda* also defined what constitutes a request for counsel.

> The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates *in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.* [emphasis added]

384 U.S. at 444–445, 86 S.Ct. at 1612–13.

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the U.S. Supreme Court amplified its holding in *Miranda* by ruling that once a suspect has asserted his right to remain silent or his right to counsel, the police cannot interrogate him further

> ... until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–485, 101 S.Ct. at 1884–85.

In *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (per curiam), the U.S. Supreme Court noted that "[o]n occasion, an accused's asserted request for counsel may be ambiguous or equivocal." 469 at 95, 105 S.Ct. at 492. The Court pointed out that lower courts have developed conflicting standards for deciding cases involving ambiguous requests for counsel. *Id.* at 96, note 3, 105 S.Ct. at 493, note 3. However, in *Smith,* the Court suppressed defendant's incriminating statements finding that the defendant asserted his right to counsel and his request became equivocal only upon further questioning by the police.

Recently, in *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the U.S. Supreme Court affirmed a lower court's suppression of a confession by a defendant who asserted his right to counsel, but later gave his confession to a different police officer questioning defendant on a different crime than that for which he was arrested. The court pointed out that the "bright-line" rule that has been applied in cases following *Edwards, supra,* and *Miranda, supra,* provides a predictability beneficial both to the accused and the State.[3] The court found no reason in *Roberson* to make an exception to the "bright-line" rule because the defendant confessed to a different crime than the crime for which he was arrested and requested counsel.

In this case, the defendant was arrested on a charge of uttering worthless checks, and was then questioned repeatedly during the next five days concerning the murder. Although he had a lawyer appointed to represent him on the check charge, he was

graph examination, and (2) the prosecution's failure to identify the defendant during the trial as Harold Douglas Gunnoe.

2. The fifth amendment prohibits compelling self-incrimination, and includes, at least subsequent to *Miranda,* the right to have counsel present during any custodial interrogation. The sixth amendment contains an explicit right to the assistance of counsel that attaches when an accused has been indicted or adversary criminal proceedings have otherwise begun. *See, Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and its progeny.

3. The Court stated that:

> In *Fare v. Michael Co.,* 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979), we explained that the "relatively rigid requirement that interrogation must cease upon the accused's request for an attorney ... has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible ..."

108 S.Ct. at 1098.

not appointed nor did he retain a lawyer to represent him during the murder interrogation. Clearly, the murder interrogation was custodial, and he had the right to a lawyer before responding to questions regarding the murder. When he was asked to take a polygraph, the defendant said he "... wanted to contact his lawyer first and see what he said about it."[4] (Suppression Transcript at 47). An officer called the lawyer appointed to represent defendant on the check charge who responded that he had no objection as long as defendant was not questioned about the charge of uttering checks.[5] This response was relayed to the defendant who then agreed to take the polygraph (Suppression Transcript at 75), signed a written waiver of his *Miranda* rights, and confessed to the murder.

In Syllabus Point 1 of *State v. Bradley*, 163 W.Va. 148, 255 S.E.2d 356 (1979), we stated:

"When a criminal defendant requests counsel, it is the duty of those in whose custody he is, to secure counsel within a reasonable time. In the interim, no interrogation shall be conducted, under any guise or by any artifice."

*See also* Syl. pt. 2, *State v. Easter*, 172 W.Va. 338, 305 S.E.2d 294 (1983) and Syl. pt. 2 of *State v. Green*, 172 W.Va. 727, 310 S.E.2d 488 (1983). Although we recognize that further questions may be asked of a defendant to clarify an equivocal request for counsel (Syl. pt. 3, *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980), Syl. pt. 2, *State v. Green*, 177 W.Va. 727, 310 S.E.2d 488 (1983)), defendant's request for counsel in this case was a limited request, but was not equivocal.

Defendant unequivocally requested advice of counsel on a specific matter—whether he should take a polygraph. The statement of the lawyer appointed to represent him on the check uttering charge was not responsive to his request for advice of counsel regarding the polygraph. In spite of the fact that defendant never received advice of counsel on this question, the officers continued to question him, obtained a written waiver of rights, conducted the polygraph and obtained defendant's confession to the murder. When the police failed to obtain legal advice for the defendant as he requested, at that point, defendant had invoked his fifth amendment right to counsel, and it was error to question him further before he was accorded legal counsel. We hold that defendant did not knowingly, voluntarily and intelligently waive his fifth amendment rights and his confession must be suppressed.

For the reasons stated above, the judgment of the Circuit Court of Putnam County is reversed.

REVERSED AND REMANDED.

---

4. This statement is the testimony of an officer who was present when defendant requested advice from his attorney. Defendant insisted at trial that he repeatedly requested a lawyer but was refused. We need not resolve the discrepancy between defendant's testimony and the officer's testimony because, even assuming the officer's version is correct, failure to suppress the confession is reversible error.

5. The officer who called the attorney testified at the suppression hearing that:

I went downstairs there at Company B at South Charleston. I called Mr. McKittrick. I explained that we had went upstairs to talk to Mr. Gunnoe and we wished to question him in the murder of Veronica Blanton, did he have any objection? He said, no, he didn't have any. I said, "He was telling us a story and we wanted to verify it with a polygraph." He said, "I'm not representing him on a murder." He said, "I represent him on forgery," or uttering, the charges he was currently in on. He said, "Provided no questions are asked on those charges, I have no objection."