380 S.E.2d 193

**STATE of West Virginia**

v.

**James BOWYER.**

**No. 18461.**

Supreme Court of Appeals
of West Virginia.

April 6, 1989.

Ronald J. Flora, Milton, for James Bowyer.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for State.

MILLER, Justice:

█ The defendant, James Bowyer, appeals his conviction in the Circuit Court of Cabell County for entering without breaking. He contends that his confession should not have been admitted.[1]

The evidence at the *in camera* hearing demonstrates that after the defendant was apprehended, he was taken to the City of Huntington police station sometime shortly after 2:00 a.m. Officer Murphy, who had investigated the unlawful entering, initially advised the defendant of his *Miranda* rights.[2] Prior to the actual taking of the defendant's statement, which was tape recorded, Officer Murphy asked a preliminary question: "Are you willing at this time without an attorney present to answer any questions in reference to this breaking and entering?" The defendant replied: "No, sir."

At this point, the officer asked another question: "Ok, do you want to have a lawyer now or do you want to go to Magistrate Court right now or do you want to go ahead and give me a short statement and then let us take you over there [and] book you in?" The defendant answered: "I will give you a short statement but I don't really have nothing to say[.] I don't know what was really going on up there."

Officer Murphy responded by stating: "I mean you are doing this on your own free will. I am not forcing you in anyway or coercing you to give me this statement." The defendant replied: "No, sir." This was followed by Officer Murphy's remark that "you have the opportunity to leave right now and go over to the magistrate's office or you can sit here and give me a statement. [T]hat is your decision. Do you have any objection to giving me a short

---

1. The defendant also contends that there was an unreasonable delay in taking him to a magistrate under Rule 5 of the West Virginia Rules of Criminal Procedure. We decline to address this point as it was not raised at trial.

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

statement?" The defendant answered: "No, sir, I don't." Following this, a statement was taken from the defendant.

■ The defendant argues here, as he did below, that his initial negative answer to Officer Murphy's question about making a statement should be deemed a request for counsel. This is premised on the fact that the question was phrased: "Are you willing at this time *without an attorney present* to answer any questions?" (Emphasis added).

Despite the defendant's assertion that his Sixth Amendment right to counsel was implicated, it is clear that it is not. The defendant was in custody, but formal charges had not been made before a magistrate. Our traditional rule as to when a defendant's Sixth Amendment right to counsel attaches is contained in Syllabus Point 2 of *State v. Barrow*, 178 W.Va. 406, 359 S.E.2d 844 (1987):

" 'An adversary judicial criminal proceeding is instituted against a defendant where the defendant after his arrest is taken before a magistrate pursuant to *W.Va. Code*, 62–1–5 [1965], and is, *inter alia*, informed pursuant to *W.Va. Code*, 62–1–6 [1965], of the complaint against him and of his right to counsel.' Syllabus Point· 1, in part, *State v. Gravely*, 171 W.Va. 428, 299 S.E.2d 375 (1982)."

Our holding in *Gravely* was predicated on *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), which we summarized as follows:

"In *Kirby*, the Court recognized that an accused's federal constitutional Sixth and Fourteenth Amendment right to counsel 'attaches only at or after the time that adversary judicial proceedings have been initiated against him.' 406 U.S. at 688, 92 S.Ct. at 1881, 32 L.Ed.2d at 417. The Court indicated that adversary judicial criminal proceedings could be initiated by way of 'formal charge, preliminary hearing, indictment, information, or arraignment.' 406 U.S. at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 417." 171 W.Va. at 433, 299 S.E.2d at 380.

There can be no question that *Kirby* continues to be good law, as evidenced by note 3 in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Jackson*, the State argued that initial arraignment before a magistrate should not trigger the Sixth Amendment right to counsel. The Supreme Court in rejecting this argument stated:

"In view of the clear language in our decisions about the significance of arraignment, the State's argument is untenable. *See, e.g., Brewer v. Williams*, 430 U.S. 387, 398, 51 L.Ed.2d 424, 97 S.Ct. 1232 [1239] (1977) ('[A] person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—"whether by way of formal charge, preliminary hearing, indictment, information, or *arraignment*" ') (emphasis added), *quoting Kirby v. Illinois*, 406 U.S. 682, 689, 32 L.Ed.2d 411, 92 S.Ct. 1877 [1882] (1972) (plurality opinion)." 475 U.S. at 629 n. 3, 89 L.Ed.2d at 638 n. 3, 106 S.Ct. at 1407 n. 3).

■ Thus, it is clear under *Kirby* and its progeny, which we have adopted, that the Sixth Amendment right to counsel attaches at the time judicial proceedings have been initiated against a defendant whether by way of formal charges, preliminary hearing, indictment, information, or arraignment.

■ What is involved in this case is the Fifth Amendment right to counsel under *Miranda*, which is implicated when an accused is in custody. In particular, the issue here is whether this right was invoked so as to preclude further interrogation under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh'g denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). There, the Supreme Court held that once an accused asks for counsel during custodial interrogation, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1885, 68 L.Ed.2d at 386.

In *Edwards,* the facts were similar to the case at hand. The defendant was arrested at his home and taken to the police station where he was informed of his *Miranda* rights. He responded that he understood his rights and was willing to submit to questioning. After some preliminary questions, Edwards indicated to the interrogating officer that he wanted to make a deal. The officer indicated that he had no authority to make a deal and gave him the number of the county attorney. Edwards then said, "I want an attorney before making a deal." 451 U.S. at 479, 101 S.Ct. at 1882, 68 L.Ed.2d at 382.

The questioning ceased at this point. The next morning two other officers, who were colleagues of the interrogating officer, came to the jail and asked to see Edwards. Upon being advised of their request by a jailer, Edwards said he did not want to talk with them. The jailer told him he had to talk with them and took him to meet the officers. They subsequently gave *Miranda* warnings and secured a confession. The Supreme Court held the confession invalid as Edwards had earlier invoked his right to counsel and had not initiated the second conversation.

■ It is clear under *Edwards* that the fact that an accused initially agrees to waive his *Miranda* rights and talk with the police does not preclude him from reasserting his right to counsel, in which event interrogation must cease. *Edwards* relied on *Miranda* for this proposition, stating: "The Court also indicated the procedures to be followed subsequent to the warnings.... If he requests counsel 'the interrogation must cease until an attorney is present.' [*Miranda v. Arizona*, 384 U.S.] at 474 [86 S.Ct. at 1627][.]" 451 U.S. at 482, 101 S.Ct. at 1883, 68 L.Ed.2d at 384.

*Edwards'* only refinement of *Miranda* was its holding that after the assertion of the right to counsel, an accused could relinquish the right by initiating further communications with the police. We recognized *Miranda's* precept that the assertion of the right to counsel precludes further interrogation in Syllabus Point 1 of *State v.*

*McNeal,* 162 W.Va. 550, 251 S.E.2d 484 (1978):

"Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited purpose of seeking to persuade him to reconsider his decision on the presence of counsel."

*See also State v. Green,* 172 W.Va. 727, 310 S.E.2d 488 (1983); *State v. Easter,* 172 W.Va. 338, 305 S.E.2d 294 (1983).

■ We also recognized in *State v. Bradley,* 163 W.Va. 148, 255 S.E.2d 356 (1979), that it was possible for an accused "after requesting counsel [to] recant his request, [but] there is a heavy burden upon the state to prove his waiver of right to counsel." Syllabus Point 2, in part. It is clear, however, that under *Bradley* the police may not induce the recantation by talking with the accused after he has asserted his right to counsel. This would violate *Edwards'* constitutional premise that requires the police to cease interrogation unless the defendant initiates a further dialogue.

■ In a related area, we have acknowledged in Syllabus Point 3 of *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980), that if an accused is equivocal about his desire to have counsel, then further questions may be asked to clarify his position:

"Where the defendant is equivocal in whether he desires to exercise his constitutional right to counsel, further questions may be asked in order to clarify his position."

The United States Supreme Court considered this issue in *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), where the defendant, upon being asked if he wished to have counsel, replied: "Uh, yeah, I'd like to do that." He was subsequently asked if he wished to talk to the officers without a lawyer being present, and he responded: "Yeah and no,

uh, I don't know what's what, really," and "All right, I'll talk to you then."[3]

The Supreme Court concluded that the accused's initial statement was sufficiently unambiguous to trigger the right to counsel and to foreclose further inquiry by the police. The Court outlined the State's claim that his initial statement became ambiguous "by looking to Smith's *subsequent* responses to continued police questioning and by concluding that 'considered in total' Smith's 'statements' were equivocal." 469 U.S. at 97, 105 S.Ct. at 494, 83 L.Ed.2d at 495. (Emphasis in original). It rejected this theory, stating:

"This line of analysis is unprecedented and untenable.... Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked.

Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together." 469 U.S. at 97–98, 105 S.Ct. at 494, 83 L.Ed.2d at 495.[4]

■ Thus, in substance, the Supreme Court in *Smith* held that the invocation of the right to counsel is an isolated inquiry entirely separate from the waiver question. The State cannot use the "accused's subsequent responses to cast doubt on the adequacy of the initial request [for counsel] itself." 469 U.S. at 98–99, 105 S.Ct. at 494, 83 L.Ed.2d at 496. The Supreme Court went on in *Smith* to quote from Justice Simon's dissent when the case was decided by the Illinois Supreme Court:

" 'No authority, and no logic, permits the interrogator to proceed ... on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his

3. The full dialogue, as reported in *Smith*, was:

 " 'Q. Steve, I want to talk with you in reference to the armed robbery that took place at McDonald's restaurant on the morning of the 19th. Are you familiar with this?

 " 'A. Yeah. My cousin Greg was.

 " 'Q. Okay. But before I do that I must advise you of your rights. Okay? You have a right to remain silent. You do not have to talk to me unless you want to do so. Do you understand that?

 " 'A. Uh. She told me to get my lawyer. She said you guys would railroad me.

 " 'Q. Do you understand that as I gave it to you, Steve?

 " 'A. Yeah.

 " 'Q. If you do want to talk to me I must advise you that whatever you say can and will be used against you in court. Do you understand that?

 " 'A. Yeah.

 " 'Q. You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?

 " 'A. *Uh, yeah. I'd like to do that.*

 " 'Q. Okay.' ...

   * * * * * *

 " 'Q. ... If you want a lawyer and you're unable to pay for one a lawyer will be appointed to represent you free of cost, do you understand that?

 " 'A. Okay.

 " 'Q. Do you wish to talk to me at this time without a lawyer being present?

 " 'A. *Yeah and no, uh, I don't know what's what, really.*

 "Q. *Well. You either have [to agree] to talk to me this time without a lawyer being present* and if you do agree to talk with me without a lawyer being present you can stop at any time you want to.

 "Q[*sic*]. All right. I'll talk to you then.' *Id.,* [*People v. Smith,* 102 Ill.2d 365] at 369 [80 Ill.Dec. 784, at 786], 466 N.E.2d, at 238 (1984)[.]" 469 U.S. at 92–93, 105 S.Ct. at 491, 83 L.Ed.2d at 491–92. (Emphasis and bracketed words in text of *Smith* ).

4. Because the Supreme Court found the initial statement of the accused to be unambiguous, it declined to take a position on what procedure should be followed where there is ambiguity and made this comment in note 3:

 "Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous.... Others have attempted to define a threshold standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel.... Still others have adopted a third approach, holding that when an accused makes an equivocal statement that 'arguably' can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to 'clarify' the earlier statement and the accused's desires respecting counsel...." 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3, 83 L.Ed.2d at 494 n. 3. (Citations omitted).

initial statement that he wished to speak through an attorney or not at all.' 102 Ill.2d, at 376 [80 Ill.Dec. at 789], 466 N.E.2d, at 241[.]" 496 U.S. at 99, 105 S.Ct. at 494, 83 L.Ed.2d at 496. (Footnote omitted).

Thus, it is apparent that the defendant's subsequent answers to the continued questions of Officer Murphy cannot be considered to render ambiguous his initial unambiguous invocation of the right to counsel. Obviously, these subsequent statements do not constitute a waiver under *Edwards* for the simple reason they were initiated by the police rather than volunteered by the defendant.

For the foregoing reasons, we find that the defendant's confession was not admissible and, consequently, reversible error occurred when it was admitted. The case is, therefore, reversed and remanded to the Circuit Court of Cabell County for a new trial.

Reversed and Remanded.