STATE OF WEST VIRGINIA

*v.*

DONALD G. RISSLER, JR.

(No. 14116)

Decided October 7, 1980.

*Radosh & Askin and Steven M. Askin* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *Lawrence R. Frail*, Assistant Attorney General, for defendant in error.

CAPLAN, JUSTICE:

At the January Term, 1977, of the Circuit Court of Jefferson County, the grand jury returned an indictment charging the appellant, Donald G. Rissler, Jr. with breaking and entering the High's Dairy Products Store, located in the Town of Ranson, in Jefferson County. After entering a plea of not guilty, the appellant was tried before a jury on March 16, 1977, and found guilty as charged in the indictment. Appellant's motion to arrest judgment, set aside the verdict, and grant a new trial was denied and he was sentenced to an indeterminate term of one to ten years in the State Penitentiary at Moundsville.

Appellant challenges the correctness of the trial court's rulings on the admissibility of certain oral and written statements he gave to authorities shortly after his arrest. Appellant also assigns other errors relating to the conduct of the trial.

During the early morning hours of January 9, 1977, members of the West Virginia State Police and the police forces of the Towns of Ranson and Charles Town responded to a report of a fire along State Route 9 in Jefferson County. Although they found no evidence of a fire at the address to which they had been summoned, their attention was drawn to the High's Dairy Store located across State Route 9 from the location of the reported fire. Two individuals were observed leaving the store and fleeing into an orchard located in the vicinity. Trooper W. F. Shoop of the West Virginia State Police gave chase and apprehended the appellant and another person in a field behind the store.

After being apprehended and placed in a police cruiser the appellant made an incriminating oral statement to Trooper Shoop. Prior to the commencement of the trial of the case defense counsel made a motion to suppress

that oral statement. After an in camera hearing the trial judge concluded that the oral "confession" had been freely and voluntarily made after the appellant had been advised of his constitutional rights and had knowingly and intelligently waived them.

Trooper Shoop testified that shortly after he apprehended the appellant and was walking him toward the cruiser, he was met by Patrolman Nichols of the Charles Town Police Department. It was at that time Shoop said, ". . . I advised the two subjects that they had these constitutional rights." And, although the trooper testified, "I just advised him of his rights from memory. I didn't read from anything," he was confident he told the appellant and the other arrestee that they had the right to remain silent, that anything they said could be used against them in court, that they had the right to an attorney and if they couldn't afford an attorney one would be appointed for them, and that they had a right to stop answering questions at any time until they had an opportunity to talk to a lawyer. When asked what response the appellant made, Shoop testified the appellant had indicated he understood his rights. The appellant was placed in the crusier's back seat, and Shoop got in the front seat. Shoop testified:

> "I asked Donnie first off I said Donnie, I thought you had straightened up. Donnie said, 'You wouldn't believe my story if I did tell you.' Then I asked Donnie, I said, 'Did you take anything out of the store or did you hide it before I caught you?' Donnie replied . . . 'after we got inside, we seen all the police crusiers and we didn't have time to get anything.' "

Patrolman Nichols' version of these events was consistent with Trooper Shoop's with the significant exception that Nichols testified the appellant made no response after being informed of his rights.

In contrast to both Shoop and Nichols appellant testified that he told Shoop he wanted to talk to an attorney. Appellant's testimony also differs from Shoop's as to what happened in the cruiser. He says that when Shoop

asked him if they had taken anything out of the store, he had replied, "I don't want to talk about it, I want to talk to a lawyer first."

The question before this Court is whether the evidence supports the trial court's conclusion that appellant knowingly and intelligently waived his right to remain silent and his right to have counsel present.

The starting point for any consideration of this question is *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966):

> "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. at 1628.

While *Miranda* acknowledged that an express statement of waiver followed by the giving of a statement could constitute a waiver, it also indicated that a waiver would not be presumed from the silence of the accused after warnings or from the fact a confession was eventually obtained, and it left open the question of whether an express statement is always necessary to support a finding of waiver.

Then, in 1978, the Supreme Court of North Carolina held that *Miranda* requires an "explicit" statement of waiver. *State v. Butler*, 295 N.C. 250, 244 S.E.2d 410 (1978).

The United States Supreme Court vacated this judgment[1] in part by holding that an explicit or express[2]

---

[1] Since a state court can neither add nor subtract from the mandates of the United States Constitution, the North Carolina judgment was vacated insofar as it interpreted the United States Constitution. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Conversely the United States Supreme Court was required to accept the North Carolina court's interpretation of their State Constitution just as they are required to accept this Court's interpretations of the West Virginia Constitution.

[2] The opinion in *Butler* uses both explicit and express.

statement of waiver is not invariably necessary to support a conclusion that a defendant has waived one of the "Miranda" rights. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).[3]

*Butler* establishes that under some circumstances waiver can be inferred from the actions and words of the person interrogated, and that even absent an explicit statement a court may find an intelligent and understanding waiver of a constitutional right.

While the holding of the United States Supreme Court in *Butler* is binding on this Court as a matter of federal constitutional law, the appellant urges this Court to adopt the position taken by the Supreme Court of North Carolina and hold that *W.Va. Const.* art. III §§ 14 and 5 require an explicit waiver of the right to counsel and the right to remain silent. See Fn. 1 this opinion. We have not heretofore had occasion to address this question.

We believe the more reasonable course of action is to determine the existence of a waiver upon all of the facts and circumstances of the individual case,[4] and we are unwilling to hold that in the absence of an explicit waiver there can be no circumstances in which a valid waiver can be found based on inferences drawn from the words and actions of the person interrogated. Accordingly, we hold that an explicit oral or written statement is not invariably necessary to support a conclusion that a person under interrogation has waived the right not to "be a witness against himself" as guaranteed by *W.Va. Const.* art. III § 5; and we hold that an explicit, written or oral statement is not invariably necessary to support

---

[3] Future references to *Butler* refer to the United States Supreme Court decision.

[4] Even when dealing with a right as fundamental as the right to counsel at trial, courts have consistently held waiver is to be determined on the particular facts and circumstances of the case, e.g. *United States v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938).

a conclusion that a person under interrogation has waived the right to the assistance of counsel guaranteed by *W.Va. Const.* art. III § 14.

Since in the instant case there was no explicit waiver by the defendant of his "Miranda rights", we must determine whether or not the inferences that can be properly drawn from the State's evidence are sufficient to constitute a waiver.

This Court has not addressed the question of the State's burden in proving a waiver of "Miranda rights". However, in regard to the determination of voluntariness of confessions we have held that:

> "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or part of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syl. pt. 5, *State v. Starr*, 158 W.Va. 905, 216 S.E. 2d 242 (1975); Syl. pt. 1, *State v. Vance*, 162 W.Va. 467, 250 S.E. 2d 146 (1978).

Defendant urges us to hold that the state is required to prove the waiver of "Miranda rights" beyond a reasonable doubt. We decline to do so. We believe that the burden of proof by a preponderance of the evidence as enunciated in *Starr* and *Vance* is appropriate to this question. Accordingly, we hold that in the trial of a criminal case the State must prove, at least by a preponderance of the evidence, that a person under custodial interrogation has waived the right to remain silent or the right to have counsel present. *U.S. v. Glover*, 596 F. 2d 857 (9th Cir. 1979); *see, Tague v. Louisiana*, 444 U.S. 469, 100 S. Ct. 652, 62 L. Ed. 2d 622 (1980).

To aid us in our evaluation of the State's evidence in this case it is profitable to compare the facts of *Butler, supra,* wherein the United States Supreme Court found the evidence sufficient to support a conclusion of waiver. At the time of Butler's arrest, he was orally advised of his rights. He was then taken to a police station and

prior to beginning any interrogation or further advice of rights there was a determination as to Butler's literacy. Only after it had been determined that he was literate was he handed a written advice of rights form, which he read. Then he was again advised orally of his rights. He initially remained silent when advised of his right to a lawyer, but finally said: "I will talk to you, but but I'm not signing any form." He subsequently made the inculpatory statements later used as evidence against him. Upon these facts the United States Supreme Court concluded there was no doubt that the defendant Butler was adequately and effectively advised of his rights, and that accordingly it could be inferred from the fact that he subsequently gave a statement, that he waived his Miranda rights.

The facts of the instant case differ from *Butler* in material respects. Appellant was arrested in an orchard. Contemporaneous with his arrest and while he was still walking, he was orally advised of his rights, by Trooper Shoop, who recited them from memory. The accuracy of their recitation is less certain than had they been read from a form. There is no evidence the trooper was informed as to appellant's literacy. A preponderance of evidence in the form of appellant's and Patrolman Nichols' testimony does not support a finding that appellant understood his rights. He did not, as Butler did, say that he would talk to Trooper Shoop, but merely responded to Shoop's question.

In regard to the question of waiver, the determination is threefold: were the rights given in proper form and substance, did the defendant fully understand them, and did he waive them? In *Butler*, the United States Supreme Court's conclusion of waiver rested heavily on the fact that there was no doubt about the first two of these. In this case the State's evidence is insufficient on the two threshold questions of whether the rights were given in proper form and substance and whether appellant fully understood them; it is evidence that does not support findings upon which a conclusion of waiver can be based. Absent sufficient evidence on these two points

the question of waiver cannot properly be reached and decided in the affirmative.

We conclude that upon the facts of this case, where contemporaneous with the appellant's arrest and while walking with the arresting officers to the police cruiser the appellant was advised of his rights, the prosecution failed to meet its burden of showing by a preponderance of the evidence that the accused had effectively waived his rights. Circumstances surrounding the arrest suggest that the appellant did not have the time or presence of mind to fully comprehend that he had the right to remain silent and the right to have counsel present, and to then knowingly, intelligently and voluntarily waive those rights. Accordingly, the trial court was incorrect when it concluded that a waiver had taken place, and erred when it overruled appellant's objection to the oral statement's admission at trial.

Also introduced at trial as State's Exhibit No. 1, was a written statement made by the appellant in the Ranson Police Station in the early morning of January 9, 1977. Attached to the written statement was a form labeled "Interrogation; advice of rights"; that form contained the "Miranda rights" and a waiver. The waiver, as well as the statement, had been signed by the appellant.

The appellant contends the trial court was incorrect as a matter of law when it concluded that this statement was admissible. Appellant contends it is inadmissible because the chief of police failed to "scrupulously honor" the appellant's assertion of his right to remain silent as guaranteed by *U.S. Const.* amend. V, and *W.Va. Const.* art. III § 5.

The testimony of the chief on cross-examination by appellant's counsel during the in camera hearing on the admissibility of the statement describes the events transpiring after the appellant and his co-arrestee had been brought to the Ranson Police Station. The chief describes how he read from the advice of rights form to both the appellant and his co-arrestee, after which the co-arrestee was removed to another room. "I read him

all these rights, the waiver of rights and asked him if he wanted to give me a statement. At that time he could sign it." The chief then took a statement from the co-arrestee, and believed about ten minutes had elapsed before the following occurred:

> "Then we took Mr. Ford back in the other room and asked Mr. Rissler if he wanted to give a statement at that time.
>
> "Q. Then what did he say, if anything?
>
> "A. He said, "Bill, if I give you a statement now I won't have no shot."
>
> "Q. Then what happened?
>
> "A. I got up. I told him, I said, "That is your privilege." I got up from the desk and started around the desk. I asked him, I said, "What did you tell Trooper Shoop?," which I didn't know what he had told him. I knew he'd been talking to Trooper Shoop. He said, "Hand me the paper, I'll give you a statement."
>
> "Q. Did you understand what Mr. Rissler meant when he said, 'If I give you a statement I won't have any shot?' Did you understand that he probably didn't want to give you a statement?
>
> "A. He might not, but * * * Yes, I understand what he's trying to do."

The appellant contends the chief of police failed to "scrupulously honor" his assertion of the privilege against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution and by *W.Va. Const.* art. III § 5. We agree.

> "Once warnings have been given, the subsequent procedure is clear. If the individual *indicates in any manner*, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda, supra*, 384 U.S. at 473-474, 86 S.Ct. at 1627 (Emphasis supplied).

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court amplified that aspect of the *Miranda* decision which dealt with police honoring the right to remain silent.

> "We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Mosley, supra*, 423 U.S. at 104.

While the evidence in this case indicates the appellant did not expressly ask that questioning stop, he did express his desire to remain silent in his own manner. The chief's own testimony leaves absolutely no doubt that he understood the appellant had asserted his right to remain silent, yet he immediately resumed questioning by confronting the appellant with the prior statement made to Trooper Shoop. The appellant, perhaps believing the game was lost, immediately gave a statement.

> "To permit the continuance of custodial interrogation after a momentary cessation would clearly frustrate the purposes of Miranda by allowing repeated rounds of questioning to undermine the will of the person being questioned." *Mosley, supra*, 423 U.S. at 102, 96 S.Ct. at 326.

In the instant case the appellant's privilege against self-incrimination as guaranteed by *U.S. Const.* amend. V was violated by the chief's failure to scrupulously honor it, and as *Mosley* indicates the subsequent statement was thus rendered inadmissible for this reason.

To date no decision of this Court has dealt specifically with the effect of failure of police to scrupulously honor the privilege against self-incrimination as guaranteed by *W.Va. Const.* art. III § 5. We have addressed the similar issue of the failure of police to honor a request for counsel by continuing with interrogation. *State v. Bradley*, 163 W.Va. 148, 255 S.E.2d 356 (1979). *Bradley* left no doubt that once a lawyer has been requested all interrogation must stop until the lawyer is provided or

until the request is recanted. *Bradley's* holding, which is based squarely on the West Virginia Constitution, provides the cornerstone for our ruling today on the question of the failure of police to honor the right to remain silent. We hold that once a person under interrogation has exercised the privilege against self-incrimination as guaranteed by *W.Va. Const.* art. III § 5, the police must scrupulously honor that privilege. The failure to do so renders subsequent statements inadmissible at trial. See *State v. Bradley, supra,* and *Michigan v. Mosley, supra.*

We conclude the failure to honor the appellant's assertion of his privilege against self-incrimination as guaranteed by *W.Va. Const.* art. III § 5 and *U.S. Const.* amend. V rendered his written statement inadmissible at trial. Accordingly, the trial court was incorrect as a matter of law when it concluded the statement was admissible into evidence, and it erred to appellant's prejudice when it overruled the objection to its admission at trial.

As his next assignment of error, the defendant contends the trial court committed reversible error and abused its discretion by failing to allow him to vouch the record. The purpose of vouching the record is to place upon the record excluded evidence, or to show upon the record what the excluded evidence would have proved in order that the appellate court may properly evaluate the correctness of the trial court's ruling excluding it. *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40 (1976). While the exchange of which counsel complains is at best confusing and unenlightening, it does not represent a denial of his right to vouch the record. The proof of this is in the fact that we can clearly determine from the record what it was that counsel desired to "prove." He was attempting to impeach the chief's credibility by asking the chief a question which textually pointed out that while the chief was sure of the purpose of a phone call he had made from the police station on the morning in question, there was conflicting testimony about another of the chief's statements about which he also had been certain, i.e., the statement that he informed the appel-

lant of his right to a phone call. Counsel, therefore, hoped the jury would infer from this that the chief might have been mistaken about the purpose of the phone call. Because of the extended exchange between counsel and bench, the chief never had the opportunity to answer the question, but it matters not what his answer would have been, because the impact of this matter for the purpose of impeachment of the chief's credibility was achieved by the asking of the question. Because we are able to review the "excluded evidence" the defendant was not denied the opportunity to vouch the record. The appellant does not contend that the trial court was incorrect in sustaining the objection to this evidence, but only argues in this assignment of error that he was denied his right to vouch the record. The trial court did not abuse its discretion, and committed no reversible error in this regard.

The defendant contends that it was reversible error for the trial court to fail to sustain his objection to the admissibility into evidence of certain State's exhibits consisting of stock from the High's Dairy Store which was found piled inside the door of the store on the night of the incident.

The appellant contends that because there is a slight discrepancy in the testimony of two persons as to when the objects were removed from the store and taken to the evidence locker at the Ranson Police Station, the evidence is unreliable, and the trial court should have sustained his objection to it. We disagree. A slight discrepancy in testimony as to the chain of custody does not, standing alone, render the evidence unreliable and therefore inadmissible. The defendant had the opportunity to present evidence that tampering had occurred or that the discrepancy in the testimony had in some way rendered the evidence unreliable, but failed to do so. Here, there is no evidence of unreliability which would exclude these matters as evidence. In fact, the appellant does not now contend that the evidence was unreliable. Absent any issue of unreliability the paramount consideration is whether the objects sought to be admitted can

be traced to the final custodian. *State v. Charlot*, 157 W.Va. 994, 206 S.E.2d 908 (1974). Here the chain of custody to the final custodian was unbroken. The trial court did not abuse it discretion, and committed no reversible error by admitting these items over appellant's objection.[5]

Appellant next contends that we should reverse the judgment in this case because the prosecution, while cross-examining the appellant, asked a series of questions to the effect of whether or not the appellant thought the testimony of previous witnesses, which was in conflict with his testimony, was false. Reviewing the record, we do not find this technique was used to such an extent that it constitutes reversible error under our holding in *State v. Adkins*, 162 W. Va. 815, 261 S.E.2d 55 (1979).

Because the trial court committed errors of law when it admitted the oral and written statements of the appellant into evidence over appellant's objection, and because those errors were prejudicial to the appellant, we reverse the final judgment of conviction entered below and remand the case for a new trial consistent with the views expressed in this opinion.

*Reversed and remanded.*

[5] *State v. Davis*, No. 13997 (W.Va. 5/29/80) is the latest decision of this Court on chain of custody matters.