368 S.E.2d 107

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Elbert Wayne GILES, Defendant Below, Appellant.**

**No. 16957.**

Supreme Court of Appeals of West Virginia.

March 11, 1988.

---

Kyle G. Lusk, Beckley, for Elbert Wayne Giles.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for State.

PER CURIAM:

This case is before the Court upon the appeal of Elbert Wayne Giles from his conviction of two counts of sexual misconduct and one count of abduction with intent to defile. It arises from an order of the Circuit Court of Fayette County which denied the appellant's motion for a new trial. The defendant has been ordered to serve two one-year sentences for the sexual misconduct convictions. He also received one three-to-ten-year sentence for the abduction conviction. All three sentences are to run concurrently. The appellant argues that his conviction should be reversed because, among other grounds, the trial court's in-

terpretation of the State's rape shield statute denied him the right to fully confront his accuser. We disagree and affirm.

Wayne Giles was indicted on three felonies: two counts of first degree sexual assault, and one count of abduction with intent to defile.[1] Following a jury trial, he was convicted of the abduction charge and two (then) lesser-included offenses of first degree sexual assault, sexual misconduct.[2] All charges stem from a weekend when he allegedly physically forced the prosecutrix into an automobile in Fayette County and performed oral sex upon her. He then drove to Kanawha County, checked into a motel and had intercourse with her. The following morning, the prosecutrix was returned home.

The defense to these charges was consent. The defendant's theory of the case was that the prosecutrix, a married woman, was having an affair, of several months duration, with the defendant. At the time of the alleged abduction, the defendant testified that the two consensually left the area together. However, the prosecutrix subsequently changed her mind, at which time she was returned home.

The defense's explanation for the filing of charges was that the prosecutrix sought to maintain marital tranquility, by preventing her husband from questioning the paternity of their soon-to-be born child. The timing of her first month of pregnancy coincided with the beginning of the alleged affair with the defendant. The alleged sexual assaults occurred within the second to third month of pregnancy. At the time of the trial, the prosecutrix was in or near her ninth month of pregnancy. Therefore, according to the defendant's theory, although the prosecutrix freely left her husband for the weekend, when she subsequently changed her mind and chose to return to him, she felt compelled to claim that the defendant abducted and raped her. The defendant theorizes that the prosecutrix had a motive to falsely accuse the defendant so that upon her return home, her husband would not suspect that the weekend was but another episode in an affair of several months duration that may have resulted in her pregnancy.

During the State's case-in-chief, the following facts concerning the relationship between the prosecutrix and the defendant were developed: (1) the prosecutrix testified that she made three lengthy trips with the defendant, some nine to ten months prior to trial, one of which included the two sharing a motel room;[3] (2) the prosecutrix testified on direct examination that during this time she also took trips with two other men; (3) the prosecutrix testified on direct examination that she first noted the loss of her menstrual period within one to one and one-half months of these trips; (4) the prosecutrix testified on direct examination that

1. The offenses occurred prior to the 1984 amendments to *W.Va.Code*, 61–8B–1, *et seq.* Sexual assault in the first degree is defined, in pertinent part, in *W.Va.Code*, 61–8B–3 [1976] as:

(a) A person is guilty of sexual assault in the first degree when:

(1) He engages in sexual intercourse with another person by forcible compulsion; and

(i) He inflicts serious bodily injury upon anyone; or

(ii) He employed a deadly weapon in commission of the crime; or

(iii) The victim was not a voluntary social companion of the actor on the occasion of the crime; or

. . . .

Abduction with intent to defile is defined, in pertinent part, in *W.Va.Code*, 61–2–14 [1933] as: "If any person take away, or detain against her will, a female person, with intent to marry or defile her ... he shall be guilty of a felony, and upon conviction, shall be contained in the penitentiary not less than three nor more than ten years."

Giles' indictment stated that he abducted the prosecutrix by "taking away *and* detaining her against her will, ... with intent to defile." (emphasis added). This phrasing in the conjunctive, rather than disjunctive, was noted by the trial court which required the State to establish both taking away and detaining against will.

2. Prior to the 1984 amendments, *W.Va.Code*, 61–8–9 [1976] contained the since-repealed misdemeanor offense of sexual misconduct defined, in pertinent part, as follows: "(a) A person is guilty of sexual misconduct when he engages in sexual intercourse with another person without the latter's consent...."

3. The purpose of the trips was disputed. The prosecutrix testified that she wanted to become a truck driver and traveled with Giles, a trucker, to learn about trucks. Giles testified they were having an affair.

at some unspecified time she had an affair with one of the other men, and that at an unspecified time she informed her husband and his family of the affair and was forgiven; (5) the prosecutrix and her husband testified on cross-examination, without objection, that they heard rumors that she and the defendant were having an affair; (6) the prosecutrix and her husband testified on direct examination that the defendant spent a great deal of time at their home during this period, frequently in several-day durations; (7) the prosecutrix's husband admitted that when he reported that Giles had taken his wife, he initially told the police that he did not know if the two were having an affair; (8) the prosecutrix denied ever engaging in sexual intercourse with the defendant prior to the abduction.

In regard to events for which Giles was tried, the prosecutrix testified that one evening the defendant, while intoxicated, grabbed her by the throat and forced her into his car. This testimony was substantially corroborated by the prosecutrix's sister-in-law, who was present at the time, and bruises on the prosecutrix's neck were documented in the investigation. The two then drove to a deserted road in Fayette County. The defendant told her a gun was in the glove compartment and forcibly performed an act of oral sex on her. He then drove to a motel in Kanawha County and forced her to engage in sexual intercourse. The prosecutrix testified that she was unable to escape or resist for fear of the defendant's size and the supposed gun in the glove compartment. However, the prosecutrix admitted that on one occasion she was left alone, in the car, with the doors locked, and the keys in the ignition, with the alleged gun in the glove compartment. On another occasion, she was left alone in the car when a Department of Natural Resources Ranger parked beside her. While at the motel room, the manager entered to adjust the heating system. He testified that he had a clear view of the entire room and bath but did not see a female in the room.

The defendant testified that he did not grab the prosecutrix by the throat and threaten her; but rather, grabbed her by the arm. However, he admitted that the day after the incident he noticed marks around her throat and attributed them to their sexual intercourse. As to the rest of the events, the defendant testified that all acts were consensual. He admitted telling the prosecutrix there was a gun in the glove compartment, but stated that he did so to alleviate her fears that while parked on the deserted road, someone may harm them. He further testified that he did not have a gun. The defendant testified that the prosecutrix informed him that she had misgivings about leaving her home and wished to return. It was undisputed that the defendant was experiencing mechanical problems with his car while attempting to return to Fayette County. He then asked a friend to return the prosecutrix.

This appeal primarily concerns two *in camera* discussions. First, the defendant asserts the trial court improperly applied the rape shield statute when it failed to admit certain evidence concerning the prosecutrix kissing the defendant and sitting on his lap. Second, he asserts that the trial court improperly limited the defendant's testimony concerning the prosecutrix's alleged disclosures to the defendant concerning her pregnancy and the status of her sexual relationship with her husband. The defendant argues that these rulings so affected his case that he was denied the right to fully confront his accuser, contained in both the federal and state constitutions.[4]

■ The first assignment of error relates to an *in camera* hearing following the prosecutrix's direct testimony. Initially, the trial judge considered a motion for mistrial based on an unsolicited response of the prosecutrix that the defendant was "a

---

**4.** *U.S.C.A. Const.* Amend. 6 provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses

habitual." The motion was denied.[5] Defense counsel then asked the court to determine the limits of cross-examination of the prosecutrix due to the rape shield statute, *W.Va.Code,* 61–8B–12(a).[6]

Counsel sought to cross examine the prosecutrix as to a "specific instance of sexual conduct with the defendant." The prosecutrix and her husband intimated that her relationship with the defendant prior to the alleged assault was purely platonic. The defense wanted to inquire as to whether the prosecutrix ever kissed the defendant and sat on his lap while the defendant was at her home. Defense counsel stated that two witnesses would testify that such occurred, although the witnesses were not identified.

■ The trial judge informed counsel that prior to the introduction of such evidence an *in camera* hearing would be conducted to determine its relevancy, at which time the prosecutrix would be questioned first. The court then stated, "[i]f she denies it, it is not material and I will keep it out."

Defense counsel never pursued a further *in camera* proceeding. The prosecutrix was never asked about the alleged incident while testifying before the jury. Furthermore, there is no additional reference in the record to the two unidentified witnesses.

against him." The same right is contained in *W.Va. Const.* art. III, § 14.

5. The assistant prosecutor was eliciting testimony from the prosecutrix concerning the manner in which she was returned home:

Q. Okay. What happened at the truck-stop—or at the shop?

A. He got out and Jamie and Craig came up towards him, and Jamie was—he looked like he was sort of running. It was a fast walk. And Mr. Giles told him just to go on back down there, that he didn't want to talk to him, that he wanted to talk to Craig. And Craig came up there, and he looked inside the car, and he said that I looked terrible and that I looked awful, and he wanted to know what happened. And I pulled my shirt down to show him the bruises and stuff around my neck. And then Mr. Giles told Craig what was wrong with his car and asked him if he'd fix it. So Craig started messing with his car, and he said that there wasn't nothing that he could do because he didn't know what was wrong with it. And Craig's wife pulled up and started talking to Jamie, and then Mr. Giles came back up to the car, and he told me that Craig and Jamie was going to take me home, and Craig came around to the car and was trying to get me out, and he was holding me up, and we was going towards Jamie's truck, and Mr. Giles rolled down the window, and he looked at me and said that he knew that he did wrong and that he was sorry for what he did, but he said, 'Please don't be too hard on me,' *because he knows that he's a habitual this time.* (emphasis added)

Q. Now, when you pulled up to he shop, Wayne Giles was talking to Craig and Jamie. How far were they from the car?

A. They weren't very far....

Q. When Mr. Giles made the statement to you, he was back in the car, when he made the statement to you that he had done wrong?

A. Yes.

Defense counsel did not object; but rather, raised the issue as grounds for a mistrial at the *in camera* proceeding. A curative instruction was not requested at any time.

The accused raises this ruling as one of his assignments of error, relying on *State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977). We disagree. *McAboy* concerned the State's attempt to introduce prior felony convictions, other than perjury or false swearing for impeaching the defendant, and is factually dissimilar to this case.

The decision to grant a mistrial is in the sound discretion of the trial judge. *State v. Williams,* 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983). A mistrial is granted *only* if there is a "manifest necessity for discharging the jury prior to rendering its verdict." *W.Va.Code,* 62–3–7 [1923]; *Williams,* 172 W.Va. 295, 304, 305 S.E.2d 251, 260 (1983).

The trial judge did not abuse his discretion since the prosecutrix's answer was nonresponsive, vague, and not pursued by the State in any other questions. Therefore, no manifest necessity for granting the motion existed. *State v. Compton,* 167 W.Va. 16, 277 S.E.2d 724 (1981).

6. *W.Va.Code,* 61–8B–12(a) [1976], at the time the trial was conducted, read:

(a) In any prosecution under this article in which the victim's lack of consent is based solely on his incapacity to consent because he was below a critical age, evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible. In any other prosecution under this article, evidence of specific instances of the victim's prior sexual conduct with the defendant shall be admissible on the issue of consent: Provided, that such evidence heard first out of the presence of the jury is found by the judge to be relevant.

The trial judge's comment during the *in camera* proceeding previously discussed conflicts with the balancing test adopted in *State v. Green,* 163 W.Va. 681, 693, 260 S.E.2d 257, 264 (1979):

> [S]uch evidence, that is specifically, directly related to the act for which a defendant stands charged, must be of a quality that its admission is necessary to prevent manifest injustice and therefore outweigh the State's interest in protecting persons who have been sexually abused, . . . .

However, the comment by the trial judge was merely a preliminary indication of how he may rule if called upon to do so. The opportunity to make a ruling was not given to the trial judge. Had the defendant made an offer of proof, including *when* this alleged incident occurred and *in what context* it occurred, and the trial judge had ruled upon it, then review of the trial judge's action would be proper.[7]

■ "The purpose of vouching the record is to place upon the record excluded evidence, or to show upon the record what excluded evidence, would have proved in order that the appellate court may properly evaluate the correctness of the trial court's ruling excluding it." Syl. pt. 4, *State v. Rissler,* 165 W.Va. 640, 270 S.E.2d 778 (1980).

The second assignment of error occurred during the *in camera* hearing at the close of the State's case. The defense sought to introduce evidence through testimony of the defendant that he and the prosecutrix were having an affair of several months duration prior to the alleged abduction. Further, the defendant desired to testify that the prosecutrix previously informed him that she was pregnant and had only engaged in sexual intercourse with her husband on a monthly basis.

The latter testimony was being offered to establish a motive to bring a false charge. The defendant's theory of the case was that the two were engaging in a consensual sexual relationship during the period of conception, and continued the relationship until the time of the alleged sexual assault, at which point, the prosecutrix decided to return to her husband. The defendant sought to explain the prosecutrix's conduct (bringing the false charge) as a means to avoid arousing her husband's suspicion as to the paternity of the soon-to-be-born child. The defendant contended that following the weekend she spent with the defendant, the prosecutrix chose to return to her husband. It was necessary, therefore, for her to claim abduction and sexual assault. In doing so, the husband would not suspect that the two were engaged in an affair of several months duration, which may have resulted in her pregnancy.

The trial judge ruled that the defendant could testify as to their previous relationship. However, the defendant could not testify about the prosecutrix informing him of the pregnancy or the prosecutrix's disclosure to him concerning her sexual relationship with her husband because, in the trial judge's words, they were "too remote . . . to be considered by this jury on the issue of consent."

During the defendant's case, he testified at great length to his on-going relationship with the prosecutrix and their intent to leave the area together. No corroborating witnesses were called. Even though this testimony was admitted, the defendant argues that the trial judge erroneously limited his testimony concerning the prosecutrix's disclosure of the pregnancy and her sexual relationship with her husband.

In *Green,* 163 W.Va. 681, 691, 260 S.E.2d 257, 263, we cited several cases where the defendant presented "precisely focused confrontation claim[s]." The defendant argues that two of those cases, *State v. Delawder,* 28 Md.App. 212, 344 A.2d 446

---

7. Since the accused did not preserve any alleged error, we need not address whether kissing and sitting on the accused's lap amounts to "prior sexual conduct." However, the issue has been raised in other jurisdictions, and found admissible for impeachment purposes when the defense is consent, the prosecutrix denies a prior relationship with the accused, and the conduct was near, in time, to the alleged assault. *Commonwealth v. Taylor,* 388 Pa.Supp. 243, 487 A.2d 946 (1985); *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371 (1979).

(1975) and *State v. Jalo,* 27 Or.App. 845, 557 P.2d 1359 (1976) involved issues similar to that raised by the defendant: the inability to introduce evidence that would allow the jury to infer that the prosecutrix had a motive to bring a false charge. In both cases, the appellate courts found that the defendant was deprived of the right to confront his accuser.[8]

As discussed earlier, the standard for the trial judge in determining the admissibility of such evidence is stated in *Green,* 163 W.Va. 681, 693, 260 S.E.2d 257, 264 as being of "a quality that its admission is necessary to prevent manifest injustice...."

■ The standard for appellant review of such rulings is stated in syllabus point 1 of *State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982): "A trial judge's ruling after an *in camera* hearing on admissibility of evidence of a rape victim's prior sexual relationship with defendant will not be disturbed on appeal unless there is a clear abuse of discretion."

■ The trial judge did not abuse his discretion in determining that circumstances of this case fell short of the *Green* standard.

The defendant's theory of the case was not so severely hampered by the ruling, as to have resulted in a manifest injustice. The jury had the following facts before it: (1) the prosecutrix testified that she lost her menstrual period approximately one to one and one-half months after meeting the defendant, at which time they took trips together, (2) the defendant· testified that during that one to one and one-half month period, he had intercourse with the prosecutrix on several occasions; (3) the husband testified that when he initially reported his wife's disappearance to the police he stated that he did not know if the two were having an affair; (4) both the husband and the wife admitted to knowledge of rumors concerning an affair between the wife and the defendant; (5) the wife admitted to an affair with a third person (who she met in a fashion similar to that of the defendant).[9]

Facts already elicited were sufficient to permit the jury to conclude that the prosecutrix, nine months pregnant at trial, had a motive to falsely charge the defendant. The only evidence which the defendant did not have before the jury was his testimony that the prosecutrix informed him that she was pregnant and had only engaged in sexual intercourse with her husband on a monthly basis.[10] Failure to admit this evi-

---

8. As stated in *Green,* 163 W.Va. 681, 689–90, 260 S.E.2d 257, 262–63, these cases relied on *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). *Davis* stated that the denial of a right to expose a motive to falsify "would be constitutional error of the first magnitude and no amount of showing of want of prejudice could cure it." (citations omitted). *Davis,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347, 355. *Davis* has since been limited to its facts and the harmless error rule now clearly applies to confrontation issues. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In *Van Arsdall,* the court listed a number of factors in considering whether the failure to admit evidence of motive was harmless, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686–7.

9. Following the direct examination of the prosecutrix, defense counsel, in chambers, stated: "she [the prosecutrix] has certainly talked about every single thing I wanted to talk about and a few things I didn't expect to talk about." We need not address whether the evidence concerning the rumors or the affair with the third person was properly admitted but merely mention it to note that a "manifest injustice" did not occur as a result of the exclusion of the statements allegedly made by the prosecutrix to the defendant.

10. The evidence, as offered, is also speculative. The evidentiary hypothesis given for its admission does not logically result from the offered evidence. The defendant's theory of the case did not hinge on whether he is the father of the child. Rather, it hinged on the prosecutrix's fear that the husband would question the paternity of the child. Therefore, whether the prosecutrix or the defendant thought that he may be the father does not lead to the inference that the husband also thought the defendant may be the father. *See Hubbard v. State,* 271 Ark. 526, 611 S.W.2d 526 (1981) and *Milenkovic v. State,* 86 Wis.App. 272, 272 N.W.2d 320 (1979), which

dence, in light of the amount of evidence that was already before the jury, did not create such a "manifest injustice" as to require this Court to reverse as a clear abuse of discretion.[11] Syl. pt. 1, *State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982).

Based on all the foregoing, we find no reversible error in this case and therefore affirm.

Affirmed.

NEELEY, J., dissents for reasons set forth in his dissent in *State v. Green,* 163 W.Va. at 697, 260 S.E.2d at 266 (1979).

---

distinguish the proper offer of proof for motive to falsify in *Delawder* from an improper offer.

The far more concrete evidence of the husband's suspicion came during his cross examination where he admitted telling the investigating officer that he did not know whether the two were engaged in an affair. Therefore, he was suspicious. As for the prosecutrix's fear of his suspicion, both the husband and the prosecutrix admitted to hearing rumors of an affair between the prosecutrix and Giles. Therefore, facts had already been established that she had reason to fear her husband was suspicious.

11. Appellant's counsel also asserts that the defendant was denied effective assistance of counsel by trial counsel's failure to move for a severance of the charges pursuant to *W.Va.R.Crim.P.* 12(b)(5). Appellant's counsel argues that had the defendant severed the abduction charge from the two first degree sexual assault charges the evidence offered by the defendant would have been admissible on the abduction charge, since the rape shield statute specifically applies to "any prosecution under this article." *W.Va. Code* 61–8B–12(a) [1976]. Abduction with intent to defile is not within article 8B, but rather under *W.Va.Code,* 61–2–14 [1933].

We need not address whether the rape shield statute would apply in the prosecution of the abduction charge. The only evidence actually offered by the defendant that was not admitted concerned the testimony of the defendant that the prosecutrix told him she was pregnant and that she engaged in sexual intercourse with her husband on a monthly basis. The standard for reversal based on ineffective assistance of counsel due to an attorney's choice of strategy appears in syllabus points 19, 20, 21 and 22 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). First, the defendant must prove by a preponderance of the evidence that no reasonably qualified defense attorney would opt for the strategy chosen. Second, the incompetence must contribute to the conviction. Assuming arguendo, that "no reasonably qualified defense attorney" would have made the strategic choice to try all three counts together, the defendant did not establish that the failure to sever affected the outcome of the case. We stated in note 10 that the testimony of the defendant concerning the pregnancy was offered for a purpose that required several logical leaps to reach the desired evidentiary inference. Even if the defendant's case were severed, and he was tried for abduction, we cannot assume that the testimony would have been admitted under *W.Va. Rules of Evidence* 403 and that, even if admitted, would have affected the outcome of the case.